UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  15-cv-62156-BLOOM/Valle

JOSEFINA HERRERA

       Plaintiff,

v.

BANK OF AMERICA, N.A., U.S. BANK N.A.
and RUSHMORE LOAN MANAGEMENT
SERVICES LLC,

       Defendants.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants U.S. Bank, N.A. ("U.S. Bank") and

Rushmore Loan Management Services, LLC's ("Rushmore") Motion for Summary Judgment,

ECF No. [83], and Bank of America, N.A.'s ("BOA") Motion for Summary Judgment, ECF No.

[84]. The Court has carefully reviewed the Motions, all supporting and opposing submissions,

the record in this case, and applicable law. For the reasons set forth below, the Motions are

granted.

## I. BACKGROUND[1]

    On August 1, 2007, Plaintiff Josefina Herrera ("Plaintiff") executed and delivered a note

and mortgage in the amount of $865,350.00 to BOA. BOA Statement of Undisputed Facts, ECF

---

[1] The Court notes that Plaintiff failed to properly file a statement of material facts in opposition to the
Defendants' statement of material facts as required by Local Rule 56.1. The Court instructed Plaintiff to
do so on or before August 5, 2016. ECF No. [87]. Plaintiff filed two statements of material facts, one of
which was untimely filed, and neither of which comply with Local Rule 56.1. *See* ECF Nos. [88], [89].
To the extent that any of the material facts set forth in Defendants' statements of facts have not been
controverted by Plaintiff, those facts supported by evidence in the record will be deemed admitted
pursuant to Local Rule 56.1(b).

No. [84] at 3, ¶ 1 ("BOA SOF"); U.S. Bank and Rushmore Statement of Undisputed Facts, ECF

No [83] at 2, ¶ 4 ("U.S. Bank and Rushmore SOF"); Plaintiff Statement of Material Facts, ECF

No. [88], [89], ¶ 1 ("Pl. SOF"). Plaintiff defaulted on the loan by failing to make payments due

and in December of 2011, BOA initiated a foreclosure action against Plaintiff in the Seventeenth

Judicial Circuit in and for Broward County.[2] BOA SOF ¶ 2; U.S. Bank and Rushmore SOF ¶ 4;

Plaintiff's Statement of Material Facts in Opposition to U.S. Bank and Rushmore's SOF, ECF

No. [89] ("Pl. Opp'n U.S. Bank and Rushmore") ¶ 2; Plaintiff's Statement of Material Facts in

Opposition to BOA's SOF, ECF No. [88] ("Pl. Opp'n BOA") ¶ 2. On March 20, 2012, Charles

Neustein, Esq. appeared in the foreclosure action on behalf of Plaintiff. U.S. Bank and Rushmore

SOF ¶ 4.

The loan transferred ownership from BOA to U.S. Bank as Legal Title Trustee for

Truman 2013 SC3 Title Trust. *Id.* ¶ 5. Loan service was transferred from BOA to Rushmore on

January 21, 2014. *Id.* On July 21, 2014, Plaintiff filed for relief under Chapter 7 of the

Bankruptcy Code through counsel Timothy S. Kingcade, Esq. *Id.* ¶ 6. In the bankruptcy

proceeding, Plaintiff indicated that Rushmore was the creditor for the loan and did not dispute

the debt. *Id.* (citing Ex. F, ECF No. [83-7]). Plaintiff stated a desire to retain the property if

---

[2] U.S. Bank and Rushmore request that the Court take judicial notice of the following cases and/or documents: (1) Florida state court pleadings in the case of *Bank of America, N.A. v. Josefina Herrera, et al.*, case number, 11-30985 filed in the Seventeenth Judicial Circuit in and for Broward County, Florida, and later amended to *U.S. Bank N.A. as Legal Title Trustee for Truman SC3 Title v. Josefina Herrera, et al.*; (2) Plaintiff's two bankruptcy filings in case number 14-23696-JKO and 16-10484-JKO filed in the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division; and (3) the Court's Order in Case No. 16-cv-60048-BB remanding the action. *See* ECF No. [82]. The Court may judicially notice a fact when it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider."). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *Id.* 201(c)(2). Accordingly the Court grants U.S. Bank and Rushmore's request for judicial notice and will judicially notice the state court pleadings, the two bankruptcy filings, and this Court's remand order.

modified, but did not enter into a modification agreement. *Id.* Plaintiff obtained a discharge on December 4, 2014 and Defendants obtained relief from the automatic stay on November 18, 2014. *Id.*

On August 19, 2014, the Neustein Law Firm withdrew as counsel of record for Plaintiff. *Id.* ¶ 7. Plaintiff was not represented by an attorney until attorney Richard Adams entered an appearance on February 2, 2015. *Id.* On April 24, 2015, the parties entered into a confidential settlement agreement, which was signed by attorney Lydia Quesada of the Law Offices of Adams & Associates, P.A., on behalf of Plaintiff. U.S. Bank and Rushmore SOF ¶ 8; Ex. J, ECF No. [83-10] ("Settlement Agreement"); Quesada Aff., ECF No. [81-1] ¶¶ 3-5 ("I personally handled the Foreclosure Action on behalf of Ms. Herrera. Our office negotiated a settlement . . . on behalf of Ms. Herrera, and with her consent, to enter into a consent judgment for an extended sale date and waiver of deficiency."). Plaintiff has not disputed or controverted U.S. Bank and Rushmore's assertion that the parties entered into the Settlement Agreement and that the Settlement Agreement was signed on Plaintiff's behalf. The Settlement Agreement contains the following provision:

> Defendant [Josefina Herrera] hereby waives all claims against the Plaintiff [U.S. Bank, N.A. as Legal Title Trustee for Truman 2013 SC3 Title] and Rushmore Loan Management Services LLC and any defenses that they may have to this foreclosure action. Defendant further agrees to release and forever discharge the Plaintiff and Rushmore Loan Management Services LLC, from any and all state or federal claims, demands or causes of action asserted, existing or claimed against either or all of them by reason of arising from or related to the Dispute, which may exist from the origination of this loan to the date of this Agreement.

U.S. Bank and Rushmore SOF ¶ 8; Ex. J ¶ 5 (the "Release").

On April 23, 2015, the state court entered a Judgment for Foreclosure against Plaintiff. *Id.* ¶ 9 (citing Ex. K, ECF No. [83-11]); BOA SOF ¶ 3. Plaintiff did not move to vacate the Judgment, but retained a new attorney, Jeanne M. Siebert, on July 16, 2015 and moved to cancel

the foreclosure sale due to a short sale, which was granted. U.S. Bank and Rushmore SOF ¶ 9. Plaintiff again moved to cancel a second foreclosure sale due to another short sale, which was granted, but the court indicated there would be no more cancellations. *Id.* ¶ 10. Despite the prior order, Plaintiff moved to cancel the third foreclosure sale due to another short sale, which was granted, but the court again indicated there would be no more cancellations. *Id.* ¶ 11. Two days before the fourth foreclosure sale, Plaintiff filed a Notice of Removal of the Foreclosure Action, removing the case to federal court. *Id.* ¶ 12 (citing Ex. O, ECF No. [83-15]). On March 25, 2016, this Court entered an order remanding the foreclosure action back to state court. *See* Case No. 16-cv-60048- BB; Ex. Q, ECF No. [12]. Plaintiff also filed a second bankruptcy proceeding, and the bankruptcy court granted U.S. Bank relief from an automatic stay and barred Plaintiff from filing bankruptcy for a two year period. U.S. Bank and Rushmore SOF ¶ 12.

According to BOA, it placed the following calls to Plaintiff: (1) on October 23, 2013, Gabriella Quesada, a representative of BOA called Plaintiff and, when unable to reach her, left Plaintiff a message asking her to return the call; (2) on October 30, 2013, Ms. Quesada called Plaintiff's cell phone and, when unable to reach her, left Plaintiff a message asking her to return the call; (3) on November 7, 2013, Ms. Quesada called Plaintiff, but Plaintiff refused to confirm her identify and the phone call did not proceed; (4) on November 12, 2013, Ms. Quesada called Plaintiff's cell phone and, when unable to reach her, left Plaintiff a message asking her to return the call; and (5) on November 25, 2013, Ms. Quesada called Plaintiff's cell phone and reached her to discuss the decline letter that was sent to her with respect to the loan modification. BOA SOF ¶ 4-9.[3] On November 5, 2013, BOA also notified Plaintiff by written correspondence that

---

[3] As discussed *infra*, Plaintiff fails to controvert these facts. Plaintiff states merely that "Plaintiff received multiple calls by Defendant in an attempt to collect a consumer debt." Pl. Opp'n BOA ¶ 3 (citing Compl. and Herrera Dep. at 52, 94, 136).

they did not receive evidence of acceptable hazard insurance for the property and had, therefore, purchased a lender-placed hazard insurance policy. *Id.* ¶ 6; Ex. C1, ECF No. [88-3] at 59.

According to U.S. Bank and Rushmore, Rushmore is the servicer for the loan and never used an automated dialer and all communications with Plaintiff were done by a natural person. U.S. Bank and Rushmore SOF ¶ 14. On September 25, 2015, Plaintiff called Rushmore seeking a short sale, which was declined on September 30, 2015. *Id.* ¶ 15. U.S. Bank acts as the Trustee for the owner of the loan and asserts that it has had no communication with Plaintiff for the loan. *Id.* ¶ 16.

Plaintiff, proceeding *pro se*,[4] filed the instant action on October 13, 2015, alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA"), the Florida Consumer Collection Practices Act ("FCCPA"), and the Telephone Consumer Protection Act ("TCPA"), as well as breach of the implied covenant of good faith and fair dealings. *See* Compl., ECF No. [1].[5] On December 29, 2015, the Court granted in part BOA's Motion to Dismiss, dismissing the FDCPA claims (Counts I, II, III, and IV) as to BOA, dismissing with prejudice Plaintiff's breach of implied covenant of good faith and fair dealings claim (Count VIII), and dismissing Plaintiff's TCPA claim (Count IX) with leave to amend. *See* ECF No. [30]. Plaintiff failed to submit an amended complaint and on January 25, 2016, the Court entered an order stating that the Complaint shall serve as the operative pleading in this matter, except as to those counts

---

[4] On March 9, 2016, attorney Gabrielly G. Valenzano entered an appearance on behalf of Plaintiff. ECF No. [59].

[5] All of the Defendants note that Plaintiff has stated that the Complaint was drafted by Plaintiff through conducting a Google search for "winning cases," and the allegations in the Complaint are a combination of allegations contained in the Google complaints. Herrera Dep., ECF No. [89-1] at 22; 152-153. Plaintiff also conceded that she filed this action at least in part because she believed it would assist her with obtaining a modification. *Id.* at 162-63. ("Q. So, why did you file this case very close to a foreclosure sale? . . . A. I understood that I had the opportunity of doing the modification—that's all I was looking for—to see if they would give me the opportunity to see what I wanted and to give the opportunity like they have given to other people. Q. Did you think this case would assist you in a modification? . . . A. From what I understand, yes.").

dismissed in the Court's Order on Motion to Dismiss. *See* ECF No. [37]. The remaining claims allege violations of 15 U.S.C. § 1692d (Count I), 15 U.S.C. § 1692e(2)(A) (Count II), 15 U.S.C. § 1692e(10) (Count III), and 15 U.S.C. § 1692b(6) (Count IV) against U.S. Bank and Rushmore and violations of Fla. Stat. § 559.72(9) (Count V), Fla. Stat. § 559.72(7) (Count VI), and Fla. Stat. § 559.72(18) (Count VII) against BOA, U.S. Bank, and Rushmore. To the extent the prior order did not fully dispose of Count VIII for breach of implied covenant of good faith and fair dealing, that claim is also addressed *infra*.

## II. LEGAL STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "would affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *Howard v. Steris Corp.*, 550 F. App'x 748, 750 (11th Cir. 2013) ("The court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor."). However, material facts set forth in the movant's statement of facts and supported by record evidence are deemed admitted if not controverted by the opposing party. S.D. Fla. L. R. 56.1(b).

"[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986); *see also Aurich v. Sanchez*, 2011 WL 5838233, at \*1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993)). The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact.  *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006). Even where an opposing party neglects to submit any alleged material facts in controversy, the court must still be satisfied that all the evidence in the record supports the uncontroverted material facts that the movant has proposed before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

### III. DISCUSSION

**U.S. Bank and Rushmore**

U.S. Bank and Rushmore (for purposes of this section, "Defendants") argue that Plaintiff has waived all rights to bring this action and that it is barred by the Release contained in the

Settlement Agreement entered into by the parties. Under Florida law, "[t]he party seeking a judgment on the basis of a settlement has the burden to establish a meeting of the minds or mutual reciprocal assent to a certain and definite proposition." *Long Term Mgmt., Inc. v. Univ. Nursing Care Ctr., Inc.*, 704 So. 2d 669, 673 (Fla. 1st DCA 1997). While uncertainty as to an agreement  on a nonessential or small item will not preclude a finding of an enforceable settlement, the agreement must be sufficiently specific and mutually agreeable as to every essential element. *See Don L. Tullis and Assocs., Inc. v. Benge*, 473 So. 2d 1384, 1386 (Fla. 1st DCA 1985) ("To be enforced, the agreement must be sufficiently specific and mutually agreeable on every essential element."); *Blackhawk Heating and Plumbing Co. v. Data Lease Financial Corp.*, 302 So. 2d 404, 408 (Fla. 1974); *Gaines v. Nortrust Realty Management, Inc.*, 422 So. 2d 1037, 1040 (Fla. 3d DCA 1982) ("Parties to a settlement agreement must reach mutual agreement on every essential element of the proposed settlement."). Preliminary negotiations or tentative and incomplete agreements will not establish a sufficient meeting of the minds to create an enforceable settlement agreement. "Nor may an agreement be determined to be final where the record establishes that it is the intent of the parties that further action be taken prior to the completion of a binding agreement." *Williams v. Ingram*, 605 So. 2d 890, 893 (Fla. 1st DCA 1992); *Albert v. Hoffman Elec. Constr. Co.,* 438 So. 2d 1015 (Fla. 4th DCA 1983)). "Settlement agreements are favored as a means to conserve judicial resources. Courts will enforce them when it is possible to do so." *Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2002).

Plaintiff has failed to controvert—or even *address*—Defendants' assertion that the parties entered into the Settlement Agreement and that the Agreement was signed on behalf of the Plaintiff on April 24, 2015. Accordingly, these facts, which are supported by evidence in the

record, will be deemed admitted. Plaintiff's sole argument, citing no authority, is that Plaintiff "did not fully comprehend the 'Release' as presented to her." Resp., ECF No. [86] at 11. Plaintiff does not dispute that the claims asserted in the instant action are "arising from" or "related to" the loan that was foreclosed, and it is indeed clear that the instant claims are related to the foreclosure dispute. Therefore, if Plaintiff's attorney had unequivocal authority to execute the Settlement Agreement, Plaintiff's argument that she did not understand the Release is entirely irrelevant, and the Release applies.

Under Florida law, "the party seeking to compel enforcement of a settlement agreement . . . must demonstrate that [the opposing party's] attorney had clear and unequivocal authority to enter into the settlement agreement." *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485 (11th Cir. 1994) (citing *Weitzman v. Bergman*, 555 So. 2d 448, 449-50 (Fla 4th DCA 1990); *Vantage Broadcasting Co. v. WINT Radio, Inc.*, 476 So. 2d 796, 798 (Fla 1st DCA 1985)). "Employment of an attorney to represent a client does not confer on the attorney implied or apparent authority to compromise or settle the client's claims." *Sharick v. Se. Univ. of Health Scis., Inc.*, 891 So. 2d 562, 565 (Fla. 3d DCA 2004). Similarly, "[a]n attorney's belief that he or she has the authority to settle does not alone establish such authority." *Id.* (citing *Weitzman,* 555 So.2d at 449 ("[c]aselaw indicates that courts have been very stringent in what they find to be a 'clear and unequivocal' grant of authority"); *Dixie Operating Co. v. Exxon Co., U.S.A.,* 493 So.2d 61, 63 (Fla. 1st DCA 1986) (declining "to place the determination of whether clear and unequivocal authority was given under the control of the attorney exercising the authority on the basis of good faith belief when a dispute over that authority arises between the attorney and client")).

Defendants have presented a sworn affidavit from attorney Lydia Quesada, stating that she "personally handled the Foreclosure Action on behalf of Ms. Herrera[,]" and "negotiated a settlement with the Plaintiff on behalf of Ms. Herrera, and with her consent, [entered] into a consent judgment for an extended sale date and waiver of deficiency." Quesada Aff. ¶ 3. The affidavit further states that Ms. Quesada "was granted authority by Ms. Herrera to sign the Settlement Agreement on her behalf" and "[a]t no time did anyone in [Ms. Quesada's] office make any representations in the Foreclosure Action without full consent and knowledge by Ms. Herrera." *Id.* ¶¶ 4-5. Again, nowhere in any of Plaintiff's filings has she addressed—much less controverted—Defendants' assertion, supported by record evidence, that Plaintiff's attorney had full authority to execute the Settlement Agreement. This fact is deemed admitted. Accordingly, the Release bars all of Plaintiff's claims against Defendants that accrued from August 1, 2007, the date the loan was executed, until April 24, 2015, the date the Settlement Agreement was executed.

### 1. Counts I, II, III, and IV – Violations of the FDCPA

Counts I, II, III, and IV allege violations of the FDCPA against U.S. Bank and Rushmore. In Count I, Plaintiff alleges violations of 15 U.S.C. § 1692d, which provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." In relevant part, this includes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). In support of this claim, Plaintiff has alleged that Defendants called her cellular telephone repeatedly, falsely alleged that Plaintiff's modification would have to wait until after the sale of her property,  and have "added illegal amounts to the balance of the judgment through

. . . force-placed insurance" and therefore have "willfully and knowingly forced Plaintiff to lose her home." Compl. ¶¶ 37-40. Count II asserts violations of section 1692e(2)(A), which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" including "[the] false representation of . . .the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Plaintiff alleges that Defendants required more money for the modification/short sale of the home than the property is worth, attempted to induce Plaintiff to believe Defendants were engaged in a legitimate short sale/modification negotiation when they were not, added force-placed insurance, and continued to call Plaintiff on her cellular telephone despite the fact she was represented by counsel. Compl. ¶¶ 43-45.

In Count III, Plaintiff alleges violations of section 1692e, which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" and prohibits, in relevant part, "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Plaintiff again alleges that she experienced a "barrage of telephone calls" to her cellular telephone and that Defendants went "around Plaintiff's legal counsel," added force-placed insurance, and "communicated . . . [in] writing and through U.S. mail in a way that would deceive the least sophisticated consumer." Compl ¶¶ 50-52. Finally, Count IV asserts violations of section 1692b(6), which provides in relevant part that "after [a] debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address[,]" the debt collector shall  not "communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to

11

communication from the debt collector." 15 U.S.C. § 1692b(6). Plaintiff again alleges that she received a "barrage" of harassing telephone calls to her cellular telephone and that Defendants added forced-placed insurance and communicated with her when she was represented by an attorney. Compl. ¶¶ 57-59.

"In order to prevail on an FDCPA claim, Plaintiff must prove that: (1) she was the object of collection activity arising from consumer debt; (2) Defendants are debt collectors as defined by the FDCPA; and (3) Defendants have engaged in an act or omission prohibited by the FDCPA." *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008). Here, Plaintiff fails to establish that a genuine issue of material fact remains as to whether Defendants have engaged in an act prohibited by the FDCPA. All of the claims alleged against Defendants are predicated upon the same factual allegations: Defendants called Plaintiff's cellular telephone multiple times seeking to collect a debt; Defendants contacted Plaintiff despite being represented by an attorney; Defendants illegally added force-placed insurance to Plaintiff's loan; and Defendants engaged in "dual-tracking" during the foreclosure proceedings. Again, because the Court finds enforceable the Release contained in the Settlement Agreement, only those actions occurring after April 24, 2015 constitute viable claims. Even viewing the facts in the light most favorable to Plaintiff as the non-moving party, Plaintiff has failed to provide sufficient evidence of these claims so as to create a genuine issue of material fact to survive summary judgment.

As an initial matter, Plaintiff contends that Defendants' "credibility" can be questioned and that a genuine issue of material fact remains because Defendants have failed to disclose call logs and documents. Resp. at 2. Plaintiff, however, never moved to compel better responses to the discovery, and the discovery deadline has now long passed. Accordingly, any argument that Plaintiff is unable to provide sufficient evidence of her claims as a result of any malfeasance on

the part of Defendants is not well received, and Plaintiff has waived any right to assert these arguments on summary judgment. *See* Local Rule 26.1(g) ("All motions related to discovery, including but not limited to motions to compel discovery . . . shall be filed within thirty (30) days of the occurrence of grounds for the motion. Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, may constitute a waiver of the relief sought."). Plaintiff also asserts that Defendants "intentionally and unreasonably prevented Plaintiff from exercising [her] right to depose" and "prohibit[ed] Plaintiff from using a deposition transcript as evidence in this response." Resp. at 2.[6] Defendants maintain that Plaintiff's assertions that she was prevented from taking a deposition of U.S. Bank and Rushmore is a complete misstatement to the Court, and that Plaintiff indeed took the deposition of Roger Martin, the designated corporate representative for Rushmore and U.S. Bank, as Rushmore is U.S. Bank's servicer for the subject loan. *See* Repl., ECF No. [94] at 3; Ex. B, ECF No. [94-2] (email correspondence between court reporter and Defendants' counsel regarding transcript order form for deposition of Rushmore's corporate representative). Whether or not Plaintiff's assertions amount to a misrepresentation before the Court, any argument at this stage of the proceedings regarding a failure to appear for a deposition has been waived and will not be considered. *See* Local Rule 26.1(g).

Plaintiff heavily relies on her own deposition testimony to support her allegations that Defendants harassed Plaintiff with multiple phone calls. *See* Pl. Opp'n U.S. Bank and Rushmore ¶ 3 (citing Herrera Dep. at 52, 94, 135-36, 167, 169, 228-29, 235); *id.* ¶ 6 (citing Herrera Dep. at 136-38, 176, 184); *id.* ¶ 7 (citing Herrera Dep. at 137-38, 142, 222-24). "[F]or purposes of

---

[6] Confusingly, Plaintiff asserts that "Plaintiff had the hopes of deposing Defendants regarding this issue [regarding call logs], but Plaintiff was prohibited from deposing Rushmore Loan Management Services as no representative of US Bank appeared at its scheduled deposition, and US Bank failed to provide documents in response to a subpoena duces tecum, wasting Plaintiff's time and not allowing Plaintiff to adequately depose." Resp. at 11-12.

summary judgment, there is nothing inherently wrong with 'self-serving testimony,' and it may not be disregarded by the district court in determining whether there is a genuine dispute of fact on a material issue in the case." *Newsome v. Chatham Cty. Det. Ctr.*, 256 F. App'x 342, 346 (11th Cir. 2007) (citing *Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir. 2005). Indeed, "'[c]ourts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'" *Id.* (quoting *Price*, 416 F.3d at 1345).

Here, "however, Plaintiff's testimony alone . . . does not create a substantial conflict in evidence and therefore does not give rise to a triable issue of fact." *Brock v. Bank of Am., N.A.*, No. 2:11-CV-00083-RWS, 2012 WL 1802315, at *3 (N.D. Ga. May 17, 2012) (citing *United States v. Davis*, 809 F.2d 1509, 1512 (11th Cir. 1987) ("To create a jury question, the conflicting evidence must be 'substantial.'")); *see also Chadwick v. Bank of Am., N.A.*, 616 F. App'x 944, 950 (11th Cir. 2015) ("[Plaintiff's] vague, self-serving testimony that he spoke with an unnamed . . . representative on some unspecified date, and the representative told him not to send [defendant] any money, is insufficient to establish a genuine issue of fact as to whether [defendant] misrepresented its intentions to [plaintiff]."); *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Plaintiff has failed to establish—or even allege—the dates or approximate time frames of any calls made by U.S. Bank or Rushmore, or which of the three Defendants made the alleged calls. One portion of Plaintiff's testimony cited by Plaintiff refers only to calls from BOA. *See* Herrera Dep. at 52:10-11 ("Before, Bank of America called me many times, many times."). The

remaining portions of Plaintiff's deposition merely verify the allegations stated in the Complaint. *See, e.g*, *id.* at 136 ("Q. And approximately an additional hundred calls were made by Rushmore to your cell phone, correct? A. Correct."); *id.* at 142 ("Q. And in fact, the reality is that defendants and their representatives continued the communications with you, without the presence of your attorney, or without their consent, correct? A. Correct."); *id.* at 167 ¶¶ 20-21 ("Q. There has been a lot of calls, correct? A. Yes, many calls."). Plaintiff testified that she could not remember even what year she received the calls. *Id.* at 167 ("Q. But you can't remember what year you received a call? A. No, sir.").

Further, throughout her response brief, Plaintiff refers only to BOA's purported calls and cites generally to two exhibits, which total over 500 pages and consist of BOA's call logs and various correspondence between Plaintiff and BOA—not U.S. Bank or Rushmore. *See* Pl. Opp'n U.S. Bank and Rushmore ¶¶ 5-7 (citing "Exhibit C"); Ex. C1, ECF No. [89-3]; Ex. C2, ECF No. [89-4]. The evidence before the Court establishes that Rushmore made only one outbound call to Plaintiff on March 26, 2014—before the Settlement Agreement was executed—when Rushmore received funds. *See* Mot. at 11; Ex. C., ECF No. [81-1] at 41 (Rushmore Loan Activity and Loss Mitigation Notes 9/3/2000 to 11/2/2015). Plaintiff has also failed to controvert Defendants' statement that "U.S. Bank has had no communication with the Plaintiff for the Loan, and has not instructed Rushmore to contact the Plaintiff for the Loan." U.S. Bank and Rushmore SOF ¶ 16. Given the record as a whole, and even viewing the facts in the light most reasonable to Plaintiff, the Court finds that no reasonable jury could find in Plaintiff's favor based upon the evidence presented that U.S. Bank and Rushmore placed a barrage of harassing calls to Plaintiff or communicated with her while represented by an attorney after April 24, 2015.

Plaintiff's allegations related to force-placed insurance similarly fail. Again, Plaintiff relies heavily on her deposition testimony. The portions of the deposition cited by Plaintiff merely reiterate the allegations in her Complaint—namely, that force-placed insurance was added to her loan while she had already obtained coverage for the property. *See* Herrera Dep. at 65[7]; *id.* at 144-45 ("Q. So, the defendants knew that you had your own property insurance, correct? A. Correct. Q. And even after these repeated notifications defendants willingly ignored the fact that you were paying your own property insurance, correct? A. Yes, correct."); *id.* at 229-30.[8] Plaintiff does not assert one fact in her Complaint, statement of facts, or response brief to support her contention that Defendants added force-placed insurance to her loan while she maintained sufficient coverage. For example, Plaintiff fails to assert, or even allege, the date that the lender-placed insurance was imposed and the time-periods during which she had maintained insurance coverage, or even which of the three Defendants actually added the insurance to her loan. In her deposition testimony, upon which Plaintiff almost exclusively relies,[9] Plaintiff

---

[7] "A. I was paying for my insurance too at the same time, and they were asking for copies of the insurance. And the broker, Angel, would send copies of the insurance that I had. And, at the same time, they were saying they were also going to put another one. So, if I had one, and, for many years, [two], the insurance, I didn't stop paying it until a very short time. I had insurance for many years. And they would call Angel to send him a copy, and he would send a copy and send a copy. And I would ask Angel, "What's happening?" And he would say that those people from Bank of America didn't know what they were doing because they would send it to the fax number that they said to show proof, that, yes, I was paying for the flood and the insurance. And that's all documented up to when I was paying."

[8] "Q. So, your testimony today was that, in fact, defendants, including U.S. Bank and Rushmore, were notified that you were paying your own separate insurance, correct? A. Correct. Specifically, your agent from, I believe you said Bacon . . . sent copies to the defendants, including U.S. Bank and Rushmore, of your property insurance on repeated occasions, correct? A. Correct. Q. So, if the defendants were notified that you had your own property insurance on repeated occasions, then they knew that you had separate property insurance, correct? A. Correct."

[9] The only other purported evidence Plaintiff cites in support of her force-placed insurance allegation is the Complaint and Exhibit C, which, again, consists of over 500 pages of correspondence and call logs between Plaintiff and Bank of America. Pl. Opp'n U.S. Bank and Rushmore ¶ 8. Plaintiff fails to direct the Court to a single entry or document within these 500 pages to support her position. "[R]ule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Stults v. Conoco, Inc.*, 76 F.3d 651, 657 (5th Cir. 1996).

repeatedly states that she cannot remember the years in which she had paid for insurance. *See id.* at 68.[10] Plaintiff's own deposition testimony states that, at some point, she stopped paying insurance. *See* Herrera Dep. at 65-66. Further, the Complaint itself as well as Plaintiff's response brief state that Plaintiff "only stopped paying her insurance on or about January 1, 2013." Compl. ¶ 29; Resp. at 16 ("Plaintiff paid her insurance while in foreclosure and only stopped paying her insurance on or about January 1, 2013."). Plaintiff has provided no evidence regarding the dates she purportedly paid for insurance and when Defendants allegedly added force-placed insurance to her loan and, by her own admission, Plaintiff stopped paying for insurance for the property in 2013. Accordingly, based upon the record evidence, and even viewing the facts in the light most favorable to Plaintiff, no reasonable jury would conclude that Defendants violated the FDCPA by illegally adding force-placed insurance after April 24, 2015.

Nor has Plaintiff set forth sufficient facts to show that Defendants engaged in alleged "dual tracking," a practice in which a lender "simultaneously pursue[s] a foreclosure on [a borrower's] home while considering [her] for a loan modification." *Chadwick*, 616 F. App'x at 949. Plaintiff, again citing to her own conclusory testimony, has failed to allege any facts regarding Defendants' alleged dual tracking, or how Defendants' actions were contrary to the law. *See* Herrera Dep. at 134[11]; *id.* at 232[12]; *id.* at 234.[13] Indeed, it appears that Plaintiff's own

---

Nonetheless, upon cursory review of these attachments, not a single document addresses an event occurring after April 24, 2015.

[10] "Q. Did you have insurance in 2009? A. If I am remembering correctly, from my understanding, yes. Q. Did you have insurance in 2010? A. In 2010, '07, '08, '09, you would have to look at the papers, but, I believe so, yes. There was one year or two years that I had my insurance and you, at the same time, got another insurance. I don't know why. Q. Did you have insurance in 2011? A. I would have to look at the papers, honestly. Q. Did you have insurance in 2012? A. I don't remember. But, with a little phone call to Angel, who was my agent, it would be easy to answer that. Q. Did you have insurance in 2013? A. I don't remember, truthfully. I would have to look, call. Or you can look. It should be there."

[11] "Q. And these violations specifically were due to calls made to you directly when you had any attorney, dual tracking, harassing and oppressing calls, force-placed insurance, among other things, correct? A. Correct."

understanding of the concept "dual tracking" is at odds with the generally accepted meaning. *Id.* at 72-73.[14]

Plaintiff has failed to set forth any evidence that Defendants U.S. Bank and Rushmore called Plaintiff, added force-placed insurance, or engaged in dual tracking in contravention of the FDCPA and thus there remains no genuine issue of material fact as to whether Defendants engaged in any activity prohibited by the FDCPA. Accordingly, summary judgment is appropriate and entered in favor of Defendants U.S. Bank and Rushmore as to Counts I, II, III, and IV.

### 2. Counts V, VI, and VII – Violations of the FCCPA

Plaintiff has also asserted claims for violations of the FCCPA against U.S. Bank and Rushmore. Plaintiff alleges the same factual predicate for her FCCPA claims as her FDCPA claims—namely, that Defendants have harassed Plaintiff via calls to her cellular telephone and have communicated with her although she was represented by an attorney, Defendants added illegal amounts to the balance of the loan through force-placed insurance, and Defendants engaged in dual tracking. As discussed *supra*, Plaintiff has presented no competent evidence of these alleged violations. Because the Court finds no genuine issue of material fact regarding whether Defendants violated the FDCPA, the Court reaches the same conclusion regarding

---

[12] "Q. Now, the defendants, including U.S. Bank and Rushmore, were aware that you had the loan modification pending and the short sale, correct? . . . If they were on notice that the loan modification and the short sale were going on at the same time—and, by 'they,' I mean the defendants, including U.S. Bank and Rushmore—they acted knowingly and willingly with malice, correct? . . . A. Correct."

[13] "Q. The tape we heard from Bank of America today, that wasn't harassing, correct? A. In that case, Bank of America had sent a modification package in which I had gone personally. When I returned is when the call comes in. I understand that it's for the same process that they were doing."

[14] "[Q.] What does dual tracking mean to you? A. Well, the calls to my cell phone and the calls to the landline. Q. That's dual tracking? A. Part of it. Q. What else? A. In consequence of that call, I had to go to the hospital. Too much stress. I spent almost a month when I couldn't walk. That's part of that. Q. That's part of dual tracking? A. I understand so, yes. . . . Q. So, what else is included in dual tracking? A. Anything that is related to the calls and that could affect me"

Case No.  15-cv-62156-BLOOM/Valle

Plaintiff's FCCPA claim under Florida law. *See* Fla. Stat. § 559.77(5) ("In applying and construing this section, due consideration and great weight shall be given to the interpretations of . . . the federal courts relating to the federal Fair Debt Collection Practices Act.") (citing 15 U.S.C. § 1692, *et seq.*). Summary judgment is therefore appropriately entered in favor of Defendants U.S. Bank and Rushmore as to Counts V, VI, and VII.

### 3.  **Count VIII – Good Faith and Fair Dealing**

To the extent that this Court's prior Order did not dismiss Count VIII for breach of implied covenant of good faith and fair dealing in its entirety, summary judgment is warranted in favor of U.S. Bank and Rushmore on that claim. As stated previously, under Florida law, every contract contains an implied covenant of good faith and fair dealing that protects "the reasonable expectations of the contracting parties in light of their express agreement." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012) (quoting *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1438 (S.D. Fla. 1996)); *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F. 3d 1146, 1151 (11th Cir. 2005). The covenant is implied as a gap-filling default rule where the terms of the contract vest a party with substantial discretion, requiring that party to act in a commercially reasonable manner and limiting its ability to act capriciously to contravene the reasonable expectations of the contract counterparty. *See Brown v. Capital One Bank (USA), N.A.*, 2015 WL 5584697, at *3-4 (Sept. 22, 2015) (citing *Karp v. Bank of Am., N.A.*, 2013 WL 1121256, at *3 (M.D. Fla. Mar. 18, 2013) and *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1225 (S.D. Fla. 2013)).

"A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion*, 420 F.3d at 1151. The implied duty of good faith must therefore "relate to the performance of an

19

express term of the contract . . . [and] cannot be used to vary the terms of an express contract." *Burger King Corp. v. Weaver*, 169 F. 3d 1310, 1316 (11th Cir. 1999) (quoting *Hospital Corp. of America v. Florida Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998) and *City of Riviera Beach v. John's Towing*, 691 So. 2d 519, 521 (Fla. 4th DCA 1997)). Further, the covenant cannot "add an obligation to the contract which was not negotiated by the parties and not in the contract." *Hosp. Corp. of Am. v. Florida Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998). As such, "there are two limitations on such claims: (1) where application of the covenant would contravene the express terms of the agreement; and (2) where there is no accompanying action for breach of an express term of the agreement." *QBE*, 94 So. 3d at 548 (citing *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001)).

Here, Plaintiff generally alleges that the "mortgage contract and insurance policies . . . contained an implied covenant of good faith and fair dealing." Compl. ¶ 78. However, she fails to identify any specific provision of the mortgage contract or "insurance policies" that was allegedly breached. As there is no accompanying action for breach of an express term of the agreement, Plaintiff may not separately maintain a claim for breach of the implied covenant of good faith. Accordingly, summary judgment is granted in favor of U.S. Bank and Rushmore as to Count VIII.

### 4. Attorney's Fees

U.S. Bank and Rushmore request the Court award attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) and Fla. Stat. § 559.77(2).[15] Section 1692k(a)(3) provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the

---

[15] Defendants state that they seek fees and costs pursuant to Fla. Stat. 559.22(2), but it appears this was a typographical or other error.

work expended and costs." Plaintiff conceded that she believed filing this case would assist her in obtaining a modification; however, the Court does not find that the instant action rises to the level of harassment so as to justify an award of fees and costs. Nor does it find an award of fees and costs appropriate pursuant to Fla Stat. § 559.77(2), which provides that "[i]f the court finds that the suit fails to raise a justiciable issue of law or fact, the plaintiff is liable for court costs and reasonable attorney's fees incurred by the defendant." Although the Court finds that no material issue of genuine fact remains based upon the record evidence presented and briefing on the issues, it declines to determine that the action as a whole would fail to raise a justiciable issue of law or fact. Accordingly, Defendants' request for an award of attorneys' fees and costs is denied.

### A.  Bank of America

As stated *supra*, the only claims remaining against BOA are Counts V, VI, and VII, alleging violations of the FCCPA.[16] The FCCPA provides that "an action brought under this section must be commenced within 2 years after the date the alleged violation occurred." Fla. Stat. § 559.77(4). Because this action was filed on October 13, 2015, Plaintiff can only pursue a cause of action for violation of the FCCPA that accrued from October 13, 2013 forward.

Plaintiff bases her FCCPA claims against BOA on the same factual allegations as those against U.S. Bank and Rushmore—namely, that BOA added force-placed insurance to her loan,

---

[16] Specifically, Count V alleges violations of Fla. Stat. § 559.72(9), which provides that, "[i]n collecting consumer debts, no person shall . . . [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Count VI asserts violations of Fla. Stat. § 559.72(7), which provides that, "[i]n collecting consumer debts, no person shall . . . [w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Count VII alleges violations of Fla. Stat. § 559.72(18), which states that "[i]n collecting consumer debts, no person shall . . . [c]ommunicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication."

engaged in "dual tracking," called her multiple times in a harassing manner, and contacted her while represented by an attorney.

For the same reasons stated above, Plaintiff has failed to set forth evidence that after October 13, 2013, BOA illegally added force-placed insurance while she maintained adequate coverage on the property. Plaintiff fails to allege any date, timeframe, or even year during which this occurred. Plaintiff cites to her own deposition testimony, arguing that she testified that she was paying for insurance when Defendants added force-placed insurance. Resp., ECF No. [85] at 13. This testimony merely restates in a conclusory fashion the allegations in the Complaint— indeed, Plaintiff could not remember the years in which she maintained insurance coverage. *See* Herrera Dep. at 65-72. This vague, conclusory testimony is insufficient to overcome Plaintiff's statements in the Complaint and in her briefing on this Motion that Plaintiff stopped paying for insurance on or about January 1, 2013. This is also consistent with BOA's November 5, 2013 letter to Plaintiff stating that she had failed to provide evidence of sufficient hazard insurance and a lender-placed policy had therefore been purchased. Compl. ¶ 29; Resp. at 16; Ex. C1 at 59.[17] Plaintiff therefore has failed to set forth a genuine issue of material fact as to whether BOA illegally added force-placed insurance to her loan after October 13, 2013. Plaintiff's allegations that BOA engaged in dual tracking similarly fail. For the reasons stated *supra*, Plaintiff has not set forth a genuine issue of fact as to whether BOA engaged in dual tracking.

Plaintiff's FCCPA claims against BOA will, therefore, only be considered based upon Plaintiff's allegations that BOA placed multiple, harassing calls to Plaintiff and contacted her while represented by an attorney. According to BOA, a BOA representative placed only four or

---

[17] Plaintiff argues that this letter was never disclosed to her during discovery; however, the letter is included in Plaintiff's own attachment, Ex. C1.

five calls to Plaintiff after October 13, 2013, [18] and none of those calls were made in an attempt to collect a debt, a necessary element to establish a violation of the FCCPA. Plaintiff has failed to controvert these facts in her statement of facts in opposition and they will therefore be deemed admitted. To the extent Plaintiff's statement of facts in opposition may be construed as an attempt to controvert these facts, she has failed to present any competent evidence of additional phone calls made by BOA after October 13, 2013. Plaintiff again relies exclusively on her conclusory and vague statements that she received calls, without any information as to the approximate date, year, or the content of these calls. Plaintiff also again cites only generally to "Exhibit C," which contains over 500 pages over two separate attachments. Plaintiff does not direct the Court to any specific calls in addition to the four identified by BOA. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).[19] Nonetheless, the parties' briefings have forced the Court to wade into the proverbial mud, and, upon full review of "Exhibit C," the Court has been unable to identify any calls within the limitations period beyond those four identified by BOA.[20]

---

[18] It is unclear whether BOA placed four calls or five calls to Plaintiff after this date. BOA's statement of facts states that BOA called Plaintiff on October 30, 2013, November 7, 2013, November 12, 2013, and November 25, 2013. BOA SOF ¶¶ 5, 7-9. However, BOA's statement of facts also states that it called Plaintiff on October 23, 2013, was unable to reach her, and left a message. *Id.* ¶ 4. Throughout its briefing, however BOA refers only to four phone calls to Plaintiff. Further, the record evidence reflects only four calls to Plaintiff placed by BOA after October 13, 2013, and the Court was unable to locate record evidence of a call placed on October 23, 2013. *See* Ex. C2, ECF No. [88-4] at 72-76.

[19] The Court equally admonishes BOA for failing to cite to the record in support of its statement of facts. *See* BOA SOF ¶¶ 4-9.

[20] The Court notes that in her response brief, Plaintiff again blames her inability to present specific evidence to support her claims on her opposing party's failure to fully disclose evidence. As noted, Plaintiff has not moved to compel better discovery and, as the discovery deadline has long passed, has waived any right to do so. *See* Local Rule 26.1(g). Plaintiff has even asserted that BOA has failed to disclose any call logs. *See* Resp. at 7 ("To date, Defendant has only provided some recordings and no call logs."). However, Plaintiff attaches call logs produced by BOA in response to a request for production. *See* Ex. C2. BOA states that it is "mystified" by these statements—the Court is as well, and expresses its concern regarding what appear to be several misstatements throughout Plaintiff's briefing.

Case No.  15-cv-62156-BLOOM/Valle

As stated above, "[i]n applying and construing [provisions of the FCCPA], due consideration and great weight shall be given to the interpretations of . . . the federal courts relating to the federal Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5). "When viewed *in toto*, the purpose and intent of the FCCPA, like the FDCPA, is to eliminate abusive and harassing tactics in the collection of debts." *Trent v. Mortgage Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1361 (M.D. Fla. 2007), *aff'd,* 288 F. App'x 571 (11th Cir. 2008).

Even viewing the facts in the light most favorable to Plaintiff as the non-moving party, Plaintiff has failed to set forth any competent evidence that the calls placed by BOA were made to collect a consumer debt. Indeed, the call logs for the four phone calls occurring after October 13, 2013 reflect that BOA twice left a voicemail for Plaintiff, was unable to speak to Plaintiff because she refused to complete the authentication, and otherwise spoke with her to advise Plaintiff that her modification was declined, informed her that a decline letter had been sent, and provided her with a phone number to appeal the decision. *See* Ex. C2 at 72-76; *see also* Herrera Dep. at 80-84 (playing a recording of a telephone call between Gabriella Quesada and Plaintiff in which Plaintiff declined to complete authentication and inquired about the status of her loan modification).

Plaintiff asserts that there remains an issue of material fact as to whether BOA was attempting to collect a debt, citing to a purported phone call in which BOA stated to Plaintiff that it was a debt collector with the purpose of collecting a debt and to Plaintiff's deposition testimony that Defendants stated in each call that they were attempting to collect a debt. *See* Resp., ECF No. 85 at 4; Pl. Opp'n BOA ¶ 5. First, Plaintiff fails to identify or even allege the dates of these calls and whether they fall within the limitations period. For example, in her response brief it appears that Plaintiff has cited to a specific recording,

24

"Call1_5_18963313_1_32," but fails to provide any citation or indication of where this recording could be located in the record, which the Court has been unable to find. Further, Plaintiff's deposition testimony again states that she is unable to recall the dates of any of these calls. *See, e.g.* Herrera Dep. at 74 ("Q. Did Bank of America try and collect against you? A. Correct. Q. When did Bank of America try and collect against you? A. I don't remember the exact date, no.").

Second, even if Plaintiff could demonstrate that these calls occurred within the limitations period, courts have held that statements or disclaimers that a communication is an attempt to collect a debt is not alone dispositive. *See Hurtubise v. P.N.C. Bank, N.A.*, No. 512013AP000015APAXWS, 2015 WL 3948192, at *3 (Fla. Cir. Ct. Jan. 5, 2015) (finding no error in trial court's holding that language stating "[t]his is an attempt to collect a debt" "is required to be included in such communications by federal law, and this language alone did not constitute a basis for a violation of § 559.72(18)"); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir. 2010) (letter bearing "disclaimer identifying it as an attempt to collect a debt . . . does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance").

"Federal courts have held that not all communications between a debt collector and a debtor are covered by the statutes, and communications which are informational in nature are outside the application of the debt collection statutes." *Hurtubise*, 2015 WL 3948192, at *4; *Parker v. Midland Credit Mgmt., Inc.*, 874 F. Supp. 2d 1353, 1357-58 (M.D. Fla. 2012) (letter informing a borrower of the assignment of an account is not a communication in connection with debt collection) (citing *South v. Midwestern Audit Services, Inc.*, 2010 WL 5088765, at *5-6 (E.D. Mich. Aug. 12, 2010) (finding a letter that was merely information was not attempting to

collect a debt and noting that "[o]ther courts have also recently recognized that 'the language used in the communication is important in determining whether it was sent in connection with the collection of a debt'"); *Gillespie v. Chase Home Fin., LLC*, 2009 WL 4061428, at *5 (N.D. Ind. Nov. 20, 2009) (finding a letter that advised the debtor that he or she had several ways to resolve a delinquency and should contact the assistance department immediately was not an attempt to collect a debt as it did not "provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form")).

Here, Plaintiff has failed to establish the requisite content of any of these purported calls. The record evidence demonstrates that, within the limitations period, the only communication made by BOA to Plaintiff was the letter informing her that lender-placed insurance had been added to her account, a call to inform Plaintiff that her modification request had been denied and providing Plaintiff the number to appeal, two voicemail messages, and a call that was ended because Plaintiff refused to provide authentication.[21] Because Plaintiff has failed to eastablish that a genuine issue of fact exists as to the nature of the communications, summary judgment is appropriate. *See Dayhoff v. Wells Fargo Home Mortgage, Inc.*, No. 6:13-CV-1132-ORL-37K, 2013 WL 6283583, at *4 (M.D. Fla. Dec. 4, 2013) (dismissing FDCPA and FCCPA claims because the purpose of the alleged calls was unclear from the complaint). Accordingly, summary judgment is entered in favor of BOA as to the remaining claims against it.

## IV. CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** as follows:

1. U.S. Bank and Rushmore's Motion for Summary Judgment, **ECF No. [83]**, is **GRANTED**.

---

[21] The call notes for the November 7, 2013 and November 12, 2013 calls refer specifically to the modification decline letter. *See* C2 at 75-76.

Case No.  15-cv-62156-BLOOM/Valle

2.   Summary judgment is entered in favor of U.S. Bank and Rushmore as to Counts I, II, III, IV, V, VI, VII, and VIII.

3.   U.S. Bank and Rushmore's request for attorney's fees and costs pursuant to 15 U.S.C. § 1692k(2) and Fla. Stat. 559.77(2) is **DENIED**.

4.   Bank of America's Motion for Summary Judgment, **ECF No. [84]**, is **GRANTED**.

5.   Summary judgment is entered in favor of Bank of America as to Counts V, VI, and VII.

6.   Final judgment will be entered by separate order.

**DONE AND ORDERED** in Miami, Florida, this 31st day of August, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:      Counsel of Record

27